USA v. Anthony Shea                           CR-96-12-B       01/13/97

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

        v.                              Criminal No. 96-12-01-B

Anthony Mark Shea



# O R D E R


Defendant Anthony Shea faces an upcoming trial on numerous charges arising out of an alleged robbery attempt at the First New Hampshire Bank in Londonderry, New Hampshire on August 4, 1995.  He moves to suppress all evidence that pertains to or was derived from a blood sample taken from him on August 24, 1995 pursuant to a search warrant issued by the United States District Court for the District of Massachusetts.  I find that the officers acted in objectively reasonable reliance of a properly obtained and facially valid warrant, and that Shea's Sixth Amendment rights had not attached when the sample was obtained. Accordingly, I deny Shea's motion to suppress the evidence.

## I. <u>BACKGROUND</u>

The attempted robbery of the First New Hampshire Bank in Londonderry occurred on August 4, 1995, during which one of the robbers apparently sustained a cut, leaving blood found at the scene. On August 11, 1995, one week later, FBI agents arrested defendant Shea and others for the attempted robbery of the Wakefield Savings Bank in Massachusetts. At the time of his arrest, Shea had 10-12 stitches in the finger area of one of his hands. In addition, a stolen car used in the Londonderry robbery was found destroyed by fire early in the morning of August 5, 1995 in Charlestown, Massachusetts. Shea grew up in Charlestown and is known to spend time in Charlestown.

Relying in part on this information, FBI Special Agent Margaret Cronin submitted an application to Magistrate Judge Alexander (D. Mass.) for a warrant to seize a blood sample from the defendant. Cronin explained that the blood sample would be tested by the DNA Analysis Unit of the FBI Laboratory for comparison with the DNA profiles of the blood evidence collected from the First New Hampshire Bank. The application included affidavits from two FBI agents assigned to the bank robbery task force detailing the Londonderry crime and an allegedly similar crime in Wakefield for which Shea was apprehended. Magistrate Judge Alexander approved the warrant and the blood sample was

taken on August 24, 1995.

## II. DISCUSSION

I need not determine whether probable cause existed to issue the warrant as long as the evidence seized is admissible under United States v. Leon, 468 U.S. 897, 922-924 (1984). Even if a search warrant is subsequently invalidated, evidence derived from the search warrant should not be suppressed when law enforcement officers act with objective good faith in obtaining a facially valid warrant. Id. at 921. Leon envisions four scenarios where evidence should be excluded despite a facially valid warrant: (1) the magistrate is misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) the magistrate wholly abandons his detached and neutral judicial role; (3) the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid; or (4) the supporting affidavits are so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. Leon, 468 U.S. at 923; United States v. Zayas-Diaz, 95 F.3d 105, 113 (1st Cir. 1996).

Of the four Leon factors, Shea argues only that Special Agent Cronin's affidavit regarding Shea's purported links to the

Londonderry robbery lacked sufficient indicia of probable cause to support a reasonable good faith official belief that there was probable cause. I reject this argument. In a lengthy affidavit, an agent with eight years experience and the coordinator of the bank robbery task force alleged a number of specific facts to support the belief that Shea was linked to the Londonderry robbery. Therefore, a well trained law enforcement officer could reasonably rely on Special Agent Cronin's affidavit as the basis for the Magistrate's determination to issue a warrant based on probable cause. Accordingly, even if Shea could demonstrate that probable cause did not exist to issue the warrant, Shea's motion to suppress fails under Leon.[1]

---

[1] After the first warrant was obtained, the government learned that Shea had used a pseudonym at a local hospital to obtain treatment for a cut on his hand approximately 2 hours after the robbery. When this information is considered in conjunction with the information contained in the original search warrant application, it would unquestionably establish probable cause to support a search warrant. Accordingly, if I were to suppress the blood evidence, the government would simply obtain a new warrant and take a new blood sample.

Shea does not argue that the evidence of his hospital treatment was discovered as a result of the seizure of his blood sample. Moreover, since a person's blood type or DNA profile remains constant, Shea is in no position to argue that analysis of a new blood sample might produce different results. Under these circumstances, I conclude that the police would inevitably discover the information Shea seeks to suppress through lawful means independent of original seizure. Thus, even if the original seizure was not supported by probable cause and the Leon exception were somehow inapplicable, I find that the evidence would be admissible pursuant to the inevitable discovery exception to the fruits of the poisonous tree doctrine. See

4

Shea additionally argues that the taking of the blood sample violated his Sixth Amendment right to counsel, since his retained counsel on the Wakefield robbery was not notified of the search warrant regarding the Londonderry robbery. This argument fails. The Sixth Amendment "becomes applicable only when the government's role shifts from investigation to accusation." Moran v. Burbine, 475 U.S. 412, 430 (1986). Even after the right to counsel has attached with regard to one crime, the government may investigate a defendant without counsel on other crimes. Maine v. Moulton, 474 U.S. 159, 180, n. 16 (1985); see also United States v. Batista, 834 F.2d 1, 4-5 (1st Cir. 1987).

"To exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at the time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." Moulton, 474 U.S. at 180; see also United States v. Nocella, 849 F.2d 33, 36-37 (1st Cir. 1988). While Shea's Sixth Amendment rights to the Wakefield robbery had attached at the time the search warrant was issued, he possessed no Sixth Amendment rights as to the Londonderry robbery. Therefore, Shea's right to counsel was not

United States v. Procopio, 88 F.3d 21 (1st Cir.), cert. denied, 117 S. Ct. 620 (1996); Nix v. Williams, 467 U.S. 431 (1984).

5

breached by the pursuit of evidence obtained by search warrant for a distinct and different offense.[2]

### III.  CONCLUSION

Shea's motion to suppress the blood sample obtained by warrant (document no. 46) is denied.

SO ORDERED.

                                    _____
                                    Paul Barbadoro
                                    United States District Judge

January 13, 1997

cc:  Bjorn Lange, Esq.
     Gary Milano, Esq.
     Michael Connoly, Esq.

---

[2]  Furthermore, even if Shea's Sixth Amendment rights had attached for the Londonderry robbery, he had no constitutional right to have his attorney present or consult with his attorney prior to the blood sample.  See United States v. Bullock , 71 F.3d 171, 177 (5th Cir. 1995), cert. denied, 116 S. Ct. 1365 (1996) (taking of blood and hair samples not critical stages under Sixth Amendment).

6